**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| DEBRA WILLMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:21-CV-00174-MAB |
| | ) | |
| THE STANDARD FIRE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter comes before the Court on Plaintiff Debra Willmore's ("Willmore")

motion to remand this case to the Circuit Court of the Second Judicial Circuit, Franklin

County, Illinois (Doc. 14). For the reasons set forth below, Wilmore's motion to remand

for lack of jurisdiction is **GRANTED**.

## PROCEDURAL AND FACTUAL BACKGROUND

Willmore filed this suit on January 5, 2021 against Defendant The Standard Fire

Insurance Company ("Standard"), the issuer of Willmore's automobile insurance policy

(Doc. 1-1, pp. 14-71). Willmore alleges Standard breached the policy by not timely

communicating and evaluating her underinsured motorist claim following a collision.

Additionally, Willmore argues Standard breached its policy by not tendering timely

payment of either the amount offered by Standard or the amount demanded by Willmore

(*Id.* at p. 12). Willmore further alleges that Standard's conduct was unreasonable and

vexatious in violation of Illinois' Insurance Code, 215 ILL. COMP. STAT. § 5/155 (*Id.*).

This suit follows an automobile collision on March 28, 2019, in West City, Illinois, involving Willmore and another motorist later determined to be at-fault and whose insurance policy limit was insufficient to cover Willmore's medical expenses (*Id*. at pp. 6-7). At the time of the  incident, Willmore had an insurance policy with Standard that contained uninsured motorist coverage totaling  $100,000 (*Id*.).

Willmore sent Standard her claim and made requests for a copy of her insurance policy on May 3 and again on May 20, 2019 (*Id*. at p. 7). On December 18, 2019, Willmore sent Standard notice pursuant to 215 ILL. COMP. STAT. § 5/143a-2(6) that the other motorist had tendered their policy limit of $25,000 to Willmore (*Id*. at p. 74). On February 12, 2020, Standard notified Willmore that a representative had been assigned to her claim, and Standard made requests for records and billing information (*Id*. at p. 76). The same day, and continuing through April 2020, Willmore regularly sent Standard accident-related medical records and bills, as well as the police report for the accident (*Id.* at pp. 79, 81, 87, 91, 95-96).

On March 10, 2020, Willmore demanded payment of $75,000 from Standard for the remaining unpaid underinsured motorist coverage through a series of emails (*Id*. at pp. 8, 82-84). Standard responded that the claim was under review and questioned whether the requested amount of $75,000 was $5,000 above the available policy limit due to a set-off for that amount in medical payments already made (*Id*.). The record indicates the parties continued arguing throughout the spring as to whether Standard owed Willmore $75,000.00 or $70,000.00. Willmore made additional demands for payment of the full $75,000.00 amount four times, on March 10, April 6, May 12, and May 19, 2020

(*Id*. at pp. 85, 88, 97, 101). On June 9, 2020, Willmore once again emailed Standard, detailing that she would not agree to the $5,000.00 deduction until she received a copy of the policy to review (*Id.* at p. 10). While disputing the reduction, Willmore still demanded payment of the undisputed $70,000, a copy of the policy, and a citation to the policy's text related to the set-off for medical payments (*Id*.). Willmore made additional requests for payment of the undisputed amount of $70,000 on June 25, July 2, and July 13, 2020 (*Id*. at pp. 115, 117-18). On July 29, 2020, Willmore received the certified copy of her insurance policy (*Id*. at p. 119), and on August 5, 2020, received a check in the amount of $70,000 from Standard (*Id*. at p. 11).

On or about January 5, 2021, Willmore filed her complaint in the Circuit Court of Franklin County, Illinois (Doc. 1, p. 1). Standard received a copy of the complaint from the Illinois Department of Insurance on January 14, 2021 (Doc. 2, p. 2). On February 12, 2021, Standard timely removed the case to this Court (Doc. 1, pp. 2-3). *See also* 28 U.S.C. § 1446(b). On March 11, 2021, Willmore filed a motion to remand asserting that the amount in controversy does not exceed the jurisdictional minimum of $75,000 required for diversity jurisdiction (Doc. 14, p. 1). On April 14, 2021, Standard filed a memorandum in opposition to remand providing estimates of the Willmore's claimed damages and countering that the jurisdictional minimum has been satisfied (Doc. 16, p. 2). Thus, the question before the Court is whether the amount in controversy for the present matter exceeds $75,000.[1]

---

[1] Neither party disputes the fact that parties are citizens of different states. Plaintiff is a citizen of Illinois, and Defendant is a citizen of Connecticut since it is a corporation of and has its principal place of business located in Connecticut (Doc. 1, p. 2).

## LEGAL STANDARD

District courts "shall have original jurisdiction of all civil matters where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States. 28 U.S.C. § 1332(a). Any civil action brought in a state court of which the district courts of the United States have original jurisdiction may be removed by the defendant or the defendants, to the district court of the United States for the district or division embracing the place where such action is pending." 28 U.S.C. § 1441(a). In cases removed on the basis of original diversity jurisdiction, the amount in controversy is determined based on the plaintiff's complaint at the time the notice of removal is filed. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006). The party seeking removal has the burden of establishing by a preponderance of the evidence that federal jurisdiction has been established. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 510–11 (7th Cir. 2006).

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). The Seventh Circuit has proposed several methods by which a removing defendant may produce a good faith estimate of the amount in controversy, including (*inter alia*):

> by calculation from the complaint's allegations (as in *Brill* [*v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005)]); by reference to the plaintiff's informal estimates or settlement demands (as in *Rising–Moore*[v. Red Roof Inns, Inc.*, 435 F.3d 813(7th Cir. 2006)]); or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands (see *Rubel v. Pfizer Inc.*, 361 F.3d 1016[, 1018] (7th Cir. 2004)).

*Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 579-80 (7th Cir. 2017) (quoting *Meridian*, 441 F.3d at 541-42).

"[T]he defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 87. However, if a defendant's assertion of the amount in controversy is questioned, the defendant must prove facts that demonstrate by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional limit. *Id.* at 88; *see Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012); *Meridian,* 441 F.3d at 540-41 ("What the proponent of jurisdiction must 'prove' is contested factual assertions . . . . Jurisdiction itself is a legal conclusion, a *consequence* of facts rather than a provable 'fact.'"). Once the defendant has made its estimate and the factual allegations supporting that estimate have been established through competent proof by a preponderance of the evidence, then "the case stays in federal court unless it is legally certain that the controversy is worth less than the jurisdictional minimum." *Meridian*, 441 F.3d at 542, 543 (citing *St. Paul Mercury Indemnity Co v. Red Cab Co.*, 303 U.S. 283 (1938)).

In short, Standard must establish, by a preponderance of the evidence, facts showing that more than $75,000 was in issue on February 12, 2020, the day of removal.

## <u>ANALYSIS</u>

To evaluate the amount in controversy, the Court looks first to the allegations in the plaintiff's complaint. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 276 (1977) ("'The sum claimed by the plaintiff controls if the claim is apparently made in

good faith.'") (quoting *St. Paul Mercury*, 303 U.S. at 288-89)); *Andrews v. E.I. Du Pont De Nemours & Co.*, 447 F.3d 510, 514-15 (7th Cir. 2006) ("Typically, we can rely on the amount alleged in the complaint to determine whether the amount in controversy is satisfied. . . .") (citing *Rising-Moore*, 435 F.3d at 815 (7th Cir. 2006)). It is "the amount required to satisfy the plaintiff's demands in full . . . in the event of removal, on the day the suit was removed." *Oshana*, 472 F.3d at 510-11 (internal citations omitted).

Willmore alleges in her complaint that Standard breached the insurance policy and that Standard's conduct was unreasonable and vexatious under the Illinois Insurance Code (Doc. 1-1, pp. 12-13). Willmore demands four forms of monetary relief in her complaint: (1) damages for the loss of the use of monies; (2) attorney's fees and costs; (3) penalties under 215 ILL. COMP. STAT. § 5/155; and (4) costs of the lawsuit. *Id.* However, Willmore does not provide specific dollar amounts for the relief sought in either the complaint or the motion to remand.[2] Therefore, the Court turns to Standard's estimate and the factual allegations supporting that estimate.

In its memorandum in opposition to remand, Standard estimated a total amount in controversy of $82,719.17 based on Willmore's allegations in her complaint (*see* Doc. 16, pp. 2-3). Standard adduced the following amounts for Willmore's claims:

    (i)     $5,000 for the unpaid portion of the benefit under the policy;
    (ii)    $1,419.17 for the delay in payment of the benefit paid under the policy;
    (iii)   $60,000 statutory penalty under 215 ILL. COMP. STAT. § 5/155;
    (iv)    $10,000 in damages under a theory of consequential or punitive damages; and
    (v)     $6,300 in attorneys' fees and costs

---

[2] In Plaintiff's motion to remand, Plaintiff stipulated that the most she can recover under 215 ILL. COMP. STAT. § 5/155 is $60,000 and that she had incurred less than $10,000 in attorney's fees and costs at the time of removal (Doc. 14, p. 1).

(*see id.*)

The greatest share of the jurisdictional minimum comes from the $60,000 statutory penalty under 215 ILCS 5/15, so the Court begins its evaluation with that estimate.

## I.    Illinois Insurance Code

In its response to Willmore's motion to remand, Standard assumes that Willmore is entitled to the maximum amount allowed by 215 ILL. COMP. STAT. § 5/155 (*i.e.,* $60,000), and thus contends that this number should be used for the Court's amount in controversy analysis (Doc. 16, pp. 2-3).

The statute provides in the relevant part, titled "Attorney Fees":

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
> (b) $60,000;
>
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

215 ILL. COMP. STAT. § 5/155.

In its notice of removal, Standard cites to an Illinois appellate decision, *Millers Mutual Insurance. Ass'n. v. House*, 286 Ill. App. 3d 378, 388 (5th Dist. 1997), where the court concluded that the language of the statute does not require a court to choose the smallest

amount under the three alternatives (Doc. 1, p. 3). This explains why Standard used $60,000 as a good faith estimate of Plaintiff's statutory award when calculating the amount in controversy at the time of removal.  However, it appears that this Illinois appellate decision is an outlier, as it is well-settled that the statute's plain language indicates that the award should be the *smallest* of the three amounts. In fact, the vast majority of Illinois courts and district courts within the Seventh Circuit have interpreted the statute's plain language to limit the award to the *least* of the three amounts. *See Kaplan v. Standard Ins. Co.*, No. 11 C 6487, 2013 WL 5433463, at *6 (N.D. Ill. Sept. 30, 2013) (citing *Great Lakes Dredge & Dock Co. v. Comm. Union Assurance Co.,* No. 94 C 2579, 2000 WL 1898533, at *14 (N.D. Ill. Sept. 18, 2000); *Domingo v. Prudential Ins. Co. of Am.*, No. 19-CV-02566, 2020 WL 6545059, at *11 (N.D. Ill. Nov. 6, 2020) ("A plaintiff can recover the smallest of the three numbers."); *Atteberry v. Esurance Ins. Servs., Inc.*, 473 F. Supp. 2d 876, 877 (N.D. Ill. 2007) ("[A]s the statute makes plain, no award in that amount is possible unless the $60,000 ceiling figure is less than 60% of [plaintiff's] recovery  . . .").*See also Rehkemper & Son, Inc., v. Ind. Lumbermens Mut. Ins. Co.,* No. 09-858-GPM, 2010 WL 547167, at *5 (S.D. Ill. Feb. 10, 2010) ("An award under [Section 155] must be limited to the smallest of the three possible amounts.") (internal citations omitted).

    In light of the aforementioned authorities, Standard's estimate of $60,000 under 215 ILL. COMP. STAT. § 5/155  appears to be Willmore's ceiling—not the floor—and the award must be limited to the smallest amount recoverable under the statute's three alternatives. Because the insured may recover no more than the smallest amount recoverable under the statute's three alternatives, the award is legally certain to be less

than Standard's $60,000 estimate of the statutory penalty. Even so, the Court will analyze the three possible recoverable amounts under the statute.

### 1.     215 ILL. COMP. STAT. § 5/155(1)(a)

The first of the statute's three alternatives is "60% the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs." *See* 215 ILL. COMP. STAT.  § 5/155(1)(a). Because the statute excludes "all costs," and the first sentence of Section (1) includes as costs both "attorney fees" and "other costs," the attorney's fees are not included in the recoverable amount. *Id.* ("[T]he court may allow as part of the taxable *costs* in the action reasonable attorney fees, other costs, *plus* an amount not to exceed any one of the following amounts . . . .") (emphasis added); *see also Domingo v. Prudential Ins. Co. of Am.*, No. 19-CV-02566, 2020 WL 6545059, at *11 (N.D. Ill. Nov. 6, 2020) ("Attorneys' fees don't count.").

Willmore alleges Standard owes her $5,000 in unpaid benefits under the policy (Doc. 1-1, pp. 7-8, 11). Thus, sixty percent of the total recoverable amount is $3,000.

### 2.     215 ILL. COMP. STAT. § 5/155(1)(b)

The second alternative, and the amount stipulated by Standard, is the fixed amount of $60,000. *See* 215 ILL. COMP. STAT. 5/155(1)(b).

### 3.     215 ILL. COMP. STAT. § 5/155(1)(c)

The third alternative is the difference between the total recoverable amount and the amount the "company offered to pay in settlement of the claim prior to the action." 215 ILL. COMP. STAT. 5/155(1)(c). Here, neither party stipulated facts related to settlement negotiations. Therefore, assuming that Standard did not offer a settlement amount, the

difference between the total recoverable amount of $5,000 and the settlement offer of $0.00, amounts to $5,000. *See Domingo*, 2020 WL 6545059, at *12 (calculating the difference between the total recoverable amount and the amount the company offered to pay in settlement by assuming the insurer offered nothing where neither party revealed details about their settlement negotiations); *Kaplan*, 2013 WL 5433463, at *5 n.9 ("Neither party refers to any settlement offer, so the court assumes none occurred.").

## II.      Amount in Controversy Overall

In order to demonstrate that the Court should retain jurisdiction, Standard must show that Willmore could recover at least $75,0001.00 on the day of removal of this case. As the largest amount of Standard's estimate was the statutory amount (*i.e.*, $60,000.00), it is unlikely that Standard can show the amount in controversy reaches the necessary level. Even so, the Court will examine each of the parties' additional estimates to ensure that remand is proper.

As a reminder, Willmore's complaint first alleged damages for the unpaid amount of benefits under the policy, which totals $5,000.00 (the difference between the benefits paid--$70,000.00—and the alleged amount of benefits owed--$75,000.00).[3] Willmore further alleges Standard unreasonably and vexatiously breached its policy obligation and that she is entitled under 215 ILL. COMP. STAT. § 5/155 to an award of attorneys' fees,

---

[3] *See* Plaintiff's complaint (Doc. 1-1, pp. 8, 10-11) (asserting Defendant claimed a "$5,000 set-off for medical payments made" and that "Plaintiff could not agree to the $5,000[] reduction until she received the policy."); Defendant's motion in opposition to remand (Doc. 16, p. 2) (averring Plaintiff's "[c]omplaint alleges that plaintiff was entitled to $75,000 of benefits rather than the $70,000 offered by [Defendant]. This amounts to $5,000 of claimed damages.").

costs, and statutory penalties (Doc. 1-1, pp. 12-13). The Illinois Insurance Code permits an insured to recover reasonable attorneys' fees and other costs from their insurer when the insurer's delay in payment is vexatious and unreasonable. *See* 215 ILL. COMP. STAT. ANN. 5/155 (West 2004).  Attorneys' fees are included in the amount in controversy where the plaintiff has a right to them based on a "contract, statute, or other legal authority." *See Webb v. Fin. Indus. Regulatory Auth., Inc.*, 889 F.3d 853, 857 (7th Cir. 2018) (citation omitted). Standard estimated the attorneys' fees totaling $6,300.00 as of Willmore's filing in state court (Doc. 16, p. 3).[4] Since the removal occurred approximately one month after filing and using the estimates from the briefing (approximately two hours per month of work at an hourly rate of $150/hour on this case up and until removal), the Court extends Standard's estimated amount in attorney's fees to $6,600.

Keep in mind, as outlined above, the maximum statutory penalty authorized is $3,000.[5] Plus $5,000.00 (which is the difference between the alleged amount of benefits paid and owed) and the $6,600 in attorney's fees yields a total amount in controversy of $14,600.

In its memorandum in opposition to remand, Standard included two other amounts in its alleged amount-in-controversy estimate: damages for the delay in

---

[4] For the purposes of calculating an estimate, Defendant assumes that Plaintiff's counsel began their representation in May 2019 (Doc. 16, p. 3). This appears reasonable considering the notification sent by Plaintiff's counsel to Defendant dated May 3, 2019, informing Defendant that the insured had retained counsel (see Doc. 1-1, p. 72). Defendant further assumes Plaintiff's counsel devoted two hours per month during a span of twenty-one months up and until the complaint was filed, and estimated an hourly rate of $150.00 (Doc. 16, p. 3). Based on the estimated hours worked at the hourly rate, Defendant offered an estimate of attorneys' fees in the amount of $6,300 (*Id.*)

[5] *See supra* Part I.

payment and consequential or punitive damages for breach of contract. If these amounts were included in the calculation of the amount in controversy, it would bring the total to $26,019.18 and the jurisdictional minimum would still not be satisfied. Even so, the Court will address each amount in turn.

Willmore alleges that she is entitled to "damages . . . for the loss of use of monies" without specifying an amount (Doc. 1-1, p. 12). Standard estimated damages of $1,419.18 for the delay in payment.[6] Notwithstanding Standard's good faith estimate, this damage estimate mut be excluded from the amount in controversy total because it constitutes "interest" under § 1332(a). The Seventh Circuit defines interest as "[the] sum that becomes due because of the delay in payment." *Principal Mut. Life Ins. Co. v. Juntunen*, 838 F.2d 942, 943 (7th Cir. 1988) (per curiam) (defining "interest" for purposes of § 1332(a) and holding that interest arising from delayed payment could not be counted toward amount in controversy).  Here, Willmore's claim for the loss of use of monies, (Doc. 1-1, p. 12), arises solely from Standard's alleged delay in payment. Willmore's characterization of the interest as damages does not change this fact. *See Watters v. Nigro*, No. 00 C 4936, 2000 WL 1898592, at *4 (N.D. Ill. Dec. 22, 2000) ("[P]laintiff . . . characterizes interest as a lost opportunity or loss. No matter how [Willmore] characterizes the

---

[6] In its motion in opposition to remand, Defendant offered an estimate of this amount using the Illinois statutory prejudgment interest rate of 5% applied to the time period between the date of the initial demand for $75,000 and the date Plaintiff received a check for the undisputed amount of $70,000 (Doc. 16, p. 2). *See* 815 ILL. COMP. STAT. 205/2). Under § 205/2, "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due . . . on money withheld by an unreasonable and vexatious delay of payment." *Id.* There are 148 days between March 10 and August 5, 2020. The per diem prejudgment interest rate is 0.000137 rounded to the nearest hundred thousandth. Multiplying the undisputed amount paid of $70,000 by the per diem rate equals $9.59, which over the 148-day period amounts to $1,419.18.

damages sought, interest may not be included in the jurisdictional amount."). Thus, this amount must be excluded as "interest" from the amount in controversy analysis at the time of removal.

Additionally, Willmore alleges that Standard's breach of contract "caused unnecessary stress over her unpaid medical bills and potential damage to her credit" (Doc. 1-1, p. 12). In its opposition to remand, Standard provides an estimate as to a potential monetary award for either "consequential damages for [Standard]'s alleged breach of contract, or . . . intentional infliction of emotional distress . . . ." (Doc. 16, p. 3). Standard asserts that "it is reasonable to estimate at least $10,000" in an award to Willmore under either theory (Doc. 16, p. 3). The Court cannot go along with this estimate, however, because there are simply no facts that suggest either are plausible. What Standard quotes in its memorandum in opposition is all that the complaint says, and Willmore's motion for remand is similarly silent. No facts establish claims other than the remedy under 215 ILL. COMP. STAT. § 5/155. While a notice of removal serves a similar function as a complaint filed in federal court and the removing party  has the burden to produce a good faith estimate of the amount in controversy, Standard cannot make Willmore's claim for her. *Brill*, 427 F.3d at 449. Moreover, "[t]he Court need not bend over backwards to construct alternative theories to persuade itself that subject matter jurisdiction exists." *Travelers*, 689 F.3d at 718. Ultimately, there is nothing in the record to support an award of damages under either theory separate from the award under 215 ILL. COMP. STAT. § 5/155; therefore, such damages cannot be reckoned into the amount in controversy with respect to the jurisdictional minimum.

In sum, it is a legal certainty that the amount in controversy does not meet the jurisdictional minimum of $75,000 under § 1332(a)

## <u>CONCLUSION</u>

For the reasons stated above, the motion to remand is **GRANTED**. This case is remanded to the Circuit Court of the Second Judicial Circuit, Franklin County, Illinois.

**IT IS SO ORDERED.**

**DATED: December 13, 2021**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**
